and Al versus Rutgers and Al. Good morning. My name is Bennett Zurofsky, I'm the attorney for the plaintiff's appellants. That's Mark Speeney, Dr. Adriana Gretschy-Green and Dr. David Ostreicher. And I'd like to reserve five minutes, if I might, for rebuttal. May it please the court, we're here appealing a grant of summary judgment against the law firm that represented Rutgers in the case below against us? CBM. Carpenter Bennett Morrissey, yes ma'am. And the motion for summary judgment was decided without any reference to the Rule 56 standards. There had been an earlier motion in the case to disqualify CBM from its representation of Rutgers because we contended that they had been effectively the attorneys for my clients. And why should the ruling on that disqualification motion not have been considered law of the case by Judge Kavanaugh? Well, was law the case in terms of they're not being disqualified, which was a legal question, but as factual determinations were factual determinations made on contested facts by a judge, and they can't be binding on the jury, which has to decide disputed facts. What facts were contested? Well, the most obvious and dramatic fact was an incident between Dr. Ostreicher and Linda Saloro, who was one of the CBM attorneys, where they had an interview to prepare for his testimony at the tenure hearings. And he had prepared for his own use a memorandum about things that had occurred between him and Professor Powers and things that he knew about that had occurred between others and Professor Powers. And he was using this in preparation. And in the course of the meeting, Ms. Saloro said, I want you to leave that document with me. And Dr. Ostreicher said, I don't want to leave this to Professor Powers to get a copy of this document. And I fear that if I give it to you, you're going to have to turn it over to him. And Linda Saloro, according to Dr. Ostreicher's testimony, said, well, we attorneys have a way of dealing with those things. And that she took the document and wrote on top of it, attorney client privilege. And on the basis of that representation, he then left the document with her. So did she deny that that happened? She denies that that happened. That is correct. She denies that that happened. There is also another incident with a person who was my client at the time this motion was made, Elizabeth Jones Eaker, where when she was involved with her preparation for her testimony at the tenure proceeding, she got upset at some of the things that the Carpenter, Bennett and Morrissey attorneys were saying about what they wanted her to testify about and what they didn't want her to testify about. So much so that she left the room to compose herself. She felt unable to go forward. When she came back to the room, the first thing she did was say to Linda Saloro, according to her testimony, who do you represent? And she says that Linda Saloro says, I represent you, of course, as well as the university. Well, except accepting that's true. I want you to help me reason through something that the Supreme Court said in Lytle versus Household Manufacturing. And I'm going to read you something off of page 550 of that. This is the court referring back to the Beacon Theaters case. And Justice Marshall writes, the court in Beacon Theaters emphasize the importance of the order in which legal and equitable claims joined in one suit would be resolved because it, quote, thought that if an issue common to both legal and equitable claims was first determined by a judge, relitigation of the issue before a jury might be foreclosed by race judicata or collateral estoppel. In other words, the motivation, unquote, the motivation is that there could be collateral estoppel if a judge determined facts first. If that's something that the Supreme Court is saying, hey, that's a real prospect that it's binding, and therefore we don't want you to do equitable claims first, we want you to do them second because the judge-made decision would be binding. Why, when in fact, in this case, you have a circumstance where the judge has to decide the issue first because your side brings the motion to disqualify and forces the issue first, why shouldn't that judge-made decision stick just the way the Supreme Court anticipates it might when it makes this comment in Beacon Theaters? Well, you're quoting from the Vital v. Household Finance Committee. Which is in turn quoting from Beacon Theaters. And they're giving their discussion of Beacon Theaters, which preceded that case, which was the reason why they took the case. They took the case to address that issue. And their holding ended up saying, we have never accorded collateral estoppel effect to the trial court's factual determinations. Instead, we have reversed and remanded each case in its entirety for a trial before a jury. So I think that Vital's exactly on point. The court below had said, for reasons of judicial economy, I'm going to enter judgment on these legal issues rather than put us through this whole thing again in front of the jury. But now that I've decided equitable cases. But Vital was talking about equitable versus legal. Here we have legal-legal. No, it's not legal-legal. It's equitable. It's certainly equitable relief for me to move and ask for the attorney representing the other side to be removed. That's equitable? Sure it is. I'm defending my, it's not a money damage award. I'm not citing, it's not a right created by a statute. It's a right created by the nature of the attorney-client privilege, the attorney-client relationship, and my right to do it. But even if it's legal. You're talking about law of the case. You're basically undercutting the whole concept of law of the case. Isn't your better argument that while the court may have decided certain facts, and it was entitled to, and if all of those facts were adduced after a full and fair discovery, and full and fair opportunity, and there were no additional different facts, then it could be law of the case. But just by virtue of the fact that the court decided certain facts, Lytle would say it can't be law of the case. That undercuts the entire law of the case theory. No, it doesn't, Your Honor, because law of the case is law of the case, not facts of the case. Well, but let's say there's a discovery motion, and the court makes a certain determination as to what occurred, and based upon that, there's a ruling. And you're saying during trial, if somebody's calling upon those facts, he's supposed to say, oh, well, gee, I really only found those facts for purposes of discovery. Let's redo this and let the jury decide them. Well, in some cases that's true. Take a look at a suppression motion. A defendant says that this was a coerced confession, asked for the confession to be suppressed, loses that motion. When he's at trial, he says that the confession was obtained and argues that it was coerced and isn't believable. But let me answer that question about law of the case directly. You've got to wait. I'm sorry. You've got to wait. If you're going to make that assertion, well, it's probably not worth the candle, but it's a highly questionable assertion you've just made. I'm not aware, and it's a bit of a tangent, but I'd be delighted to in front of a jury a suppression decision that's made by a judge. That's way off. No, no, not the suppression, but the credibility and whether that confession should be believed. It's the same facts, whether it should be believed. He can argue that you shouldn't believe this confession because look at the circumstances under which it was made. That's all that I'm saying, but it's true. I didn't brief that, and we shouldn't go off on a tangent. What evidence did you have later that would have made a difference? Well, I had a great deal of evidence later, and I'd like that the most significant evidence that I have later is the statements made by the attorneys, by CBM, to Professor Power's attorneys, where they say, we're here to settle Adriana Gretschy-Green's case. And they negotiate Adriana Gretschy-Green's and Dr. Ostreicher's rights and Mark Spinney's rights in the course of that earlier question, before we got off on the tangent, is the first thing that happened in this case, because we were aware of this problem, is that we said that we would face a motion for summary judgment by Carpenter Bennett as to our claims against them. And we litigated that claim before Chief Judge Bissell, and we prevailed on the motion for summary judgment. We promised that we would not invoke Rule 56F, and we didn't, and we prevailed on that motion before Judge Bissell. That should have been the law of the case, and frankly, I believe that we would be entitled to have them disqualified, having won that motion, on the basis of their conflict of interest with their own client Rutgers, because they were co-defendants against the same plaintiff. There's later developments in the case, right? No, the next thing that happened was the motion to disqualify. Well, let's take it out of your case for a minute and speak with me theoretically. Are you saying that if a judge has early in a case, I think there might be disputed issues of fact here, that there can't come a point in time where the judge later says, you know what, no rational jury could look at this another way, and you're done? I don't think he can do that without making fact findings of those disputed facts. Judge Bissell made a ruling that there are material, genuine, disputed facts under the terms of the rule. That's why an evidentiary hearing was... No, the evidentiary hearing was not for the summary judgment motion. The summary judgment motion was completely decided. There was a subsequent motion. He rejected my arguments... Counselor, Judge Bissell made a determination under Rule 56. And under Rule 56, his only question was whether or not there were genuine issues of material fact based on submissions, the Rule 56 record, at that point in time. You then set the table for the court to make a very And that is whether or not there was an attorney-client relationship between the party. The question is, what standard of proof should we have been required to do on that? I mean... On what? On the motion? When we made the motion to disqualify... Yes, Your Honor. I would assume that you proceeded on the basis of a preponderance of the evidence. No, we did not. I argued at the outset that the standard should be similar to the standard applied at the close of a plaintiff's case, that it should be, is there enough to go to the jury? I argued that... The jury wasn't going to decide disqualification. No, but the question is... You asked in your motion for this court there and then, after considering the motion, to disqualify counsel. There and then. Yes, I did. But I made an extensive argument under the law as to what standard of proof should be applied in that argument. And I discussed that in my brief, because the New Jersey courts say that when there's a close call, you're supposed to disqualify counsel. It doesn't require that you have the full trial and make a finding on the preponderance of the proofs. Well, that's what the judge did. And I sent you a Rule 28J letter with a recent case... Mr. Zurofsky. ...where it was exactly that. Mr. Zurofsky, isn't that what the... Whether you asked for it or not, isn't that what the judge did? The judge made a finding, and later in ruling in the summary judgment makes it clear he's found by a preponderance, maybe even at a higher standard, because he says, I just can't conceive they didn't know what was going on here. He's at that higher threshold. But more to the point, I don't understand what that has to do with your argument, because your argument seems to be... Your argument seems to be not that there was some different standard that he applied, but that no matter what standard he applied, his fact-finding can't trump the opportunity under the Seventh Amendment to do something later in front of the jury. That's your point, right? That's my point. And I'm also saying that under traditional Rule 56 standards and rule of the case standards, we had significant new evidence on the issue, and that he expressly said, I didn't consider it. He wrote that in his opinion. I did not even consider your new evidence. That was a mistake. I had a 56F affidavit. Our discovery on malpractice was stayed when he decided... Yes, 56F rises again. But when he decided the... When the summary judgment motion... When we won the summary judgment motion in those same opinions, he stayed our further discovery of that until after we were done with our case against Rutgers. I have one more question, if I might, with the indulgence of my colleagues. You've said Lytle is right on point and favors you. I want you to look at footnote four with me in that decision where the court says vacating the district court's determination in Lytle is required to afford complete and consistent relief. In other words, we've got to get rid of this in order to allow a jury to look at this evidence that should have been allowed. And then goes on to say, however, that vacating the district court's inconsistent determinations, and cites Montana, noting the inconsistent decisions pose a threat of diminishing reliance on the judiciary. You're presenting a very different circumstance here. There's no way to vacate the district judge's determination about disqualification. In fact, you haven't even asked for that. What we're dealing with here is a circumstance where we can't avoid an inconsistent result, which would undermine and diminish reliance on the judiciary, as the Supreme Court points out here, if we rule in your favor and you got an inconsistent verdict, right? Your Honor, I did ask you in this appeal to reverse the determination on disqualification and to say and enter a declaration that that decision had been wrongly decided. Let me try to get to my point. If we let stand what the district court did, there would be the risk of inconsistent decision, which in fact is what the Supreme Court points to in concern, right? Well, there's not an inconsistent decision because this was a settled case. How is it not inconsistent to say there is an attorney-client privilege if the jury says there is and there isn't for the district court to say, no, there isn't? Because he made his ruling on a very sparse record at the outset of a case because it had to be made at that time. I can't wait until the end of the case before I seek to disqualify my adversary counsel. If I thought they were improperly there and I thought I had legitimate grounds, I have to make the case then. Otherwise, I've litigated the entire case. So he made it he timing issue. But the point is we hadn't had discovery. We were forced to make it. We weren't given even the limited discovery that we sought. We were given some limited discovery, but I asked for more and I was cut back in what I was given to prepare for the hearing. Necessity required a decision to be made at that time, which is one of the reasons why I say it should have been enough that we prevailed in summary judgment, because there's no other way to preserve the jury right. How do you preserve the jury right? That was the core of the argument that I was making to Judge Kavanaugh at the outset of that hearing. And he told me, don't worry, Counselor, we're not going to be trying a case today. Now it turned out that we were. But he told me at the time that we were not. He never did say whether he agreed with me or disagreed with me and nowhere did he say what standard he applied in making his ruling. What he says is I don't believe him. Well, the question of whether he believes them or not is irrelevant on summary judgment. The question is whether a jury could possibly believe that. If he says I don't believe them, is there any inference to be drawn from that? Other than that, I think it's more probable than not that you're not telling the truth. That's his opinion. Right. That's the jury question. That's the jury question. And that's a different issue than standard of proof, isn't it? Well, you keep kind of putting them together, but one is a standard of proof issue and one is a who gets the decided issue, right? The point is that he never should have reached that standard of proof issue because that's the issue that has to be preserved for the jury. You're the one who asked him to decide it. No, I didn't ask him to decide that. I asked him not to decide it. I asked him not to decide who was telling the truth. I asked him to decide whether there was enough to get to the jury and if there was, in order to preserve the jury right, he had to disqualify. I was very, I was explicit in that. And I quote the argument in my brief where I explicitly said that. I didn't, and I said at the close of my case, Your Honor, if I had approved my malpractice case, I would have had more discovery. I would have presented more here. I don't think you should be deciding that. If he decided preponderance, he was taking the question away from the jury that had to be from the jury. I think the court has to figure out a way to deal with these motions without destroying the jury right. In the case that I sent you in my 28-J letter, the Casey case, they did exactly that. Thank you. We'll hear from you on rebuttal. You reserve substantial time on rebuttal. Yes, thank you. And thank you for permitting me to go over now. Good morning, Your Honor. My name is Elliot Abertin, Morgan Miliewicz-Abertin, and I believe what the plaintiff is asking us to do, or asking the court to do, is to view this case with blinders on. Because the record that, we have a record, we have Judge Kavanaugh who made a decision, and interestingly, the decision was based on proofs, and only proofs, that were produced by the plaintiff. As you know, Judge Kavanaugh made his decision at the end of the plaintiff's presentations, and two of those witnesses did include people from Rutgers. But wasn't it clear during the disqualification motion that this was being decided based upon fairly accelerated discovery and a limited amount of time for an evidentiary hearing? And Mr. Zyrowski specifically said, there would have been other discovery I would have pursued, but at this time, I just want to make it clear, I've not had all discovery I'd expect to have, nor have I endeavored to meet that burden of proof. The court, no, well, correctly, you weren't supposed to. So I wasn't expecting you to do that. And then we proceed further, and Mr. Zyrowski says to the court, once the court ruled on summary judgment, finding law of the case, says, wait a minute, I had additional facts, and law of the case, if I have some different facts, law of the case isn't law of the case. And Judge Kavanaugh basically says, you know, I'm not going to, quote, reconsider, I already decided it. Wasn't there a disconnect in a couple of ways in that Judge Kavanaugh kind of forgot what he said during the disqualification motion, and then also kind of forgot that law of the case isn't law of the case unless there's been a full and fair opportunity and no different additional facts? I cannot dispute with the court what Judge Kavanaugh said at the hearing. And there's another point in the hearing where I believe he says, or somewhere he said, I'm going to make a decision, and where that takes me, I don't know, because I believe my adversary was concerned about, even if the opposite result came, what if the judge ruled there was an express or an implied attorney-client relationship? And I know that he was concerned about that, but to answer the question on whether it was a full and fair hearing, we had every plaintiff testify. The difference between the plaintiffs testifying at this hearing and maybe affidavits that were submitted on the motion initially before Judge Bissell's first summary judgment motion is it was cross-examination here. And the judge did find that based on what I call essentially undisputed facts, or maybe, you know, and it's not cited in my brief, but there is a case in New Jersey where when it comes to even intent on a motion for summary judgment, if the facts are so clearly one way, if an individual subjectively says, well, I didn't intend, I didn't intend to pollute the waters, but if the facts, and in that case, there was a record of 50 years of pollution, and the Supreme Court and the trial judge in that case said, no, it's just impossible, that anyone cannot know or understand what this proceeding was. But let's talk about the facts in that case. Well, let me back up. Let me ask you a question. Sure. Okay, there were facts and the court said as a preliminary matter, as it has to, this, these attorneys can represent Rutgers. Correct. Okay, now we're ready to go, off to the races, disqualification, preliminary notion. Later on, additional facts having to do with Green's case are adduced, all right, having to do with the fact that they're basically trying to settle Green's case, so that if Green is not a client, that's kind of strange. That is an additional fact. It is. And the court, when faced with those additional facts, didn't say, are these additional facts whereby my previous ruling should not be law of the case, because I have different facts. Should the court have asked that question? No, and I would like to tell you why. Okay, what should the, what, because the court didn't. The court said, these are additional facts, they don't, they don't change anything, as compared to saying, are they different such that it should not be law of the case? Well, tell me what the court should have done. I think under the facts and circumstances of this case, where what the court was trying to decide on the disqualification motion was whether or not, A, confidential information was given to the attorneys, and B, did the people have a reasonable belief to believe that these people, that CBM were their attorneys? Now, I think we can agree that under any set of circumstances, and I don't even think the plaintiffs are arguing this, CBM expressly was never the attorney for these students. And if anything, and I believe Judge Bissell, in one of his decisions on summary judgment, talked about becoming a lawyer to a non-client, and there's authority for that in New Jersey, and that's the Petrillo case. But in those cases, the lawyer has to do something so that the client sees it and you rely on it. The additional evidence that he sought to produce. Here there's argument, I'm sorry, assertion that there's evidence that in fact that happened. I mean, Mr. Zurofsky has put in his briefs, and then again here an oral argument, a statement where allegedly there were specific assertions that I do represent you, I am your lawyer. So, we're faced with a record that has some evidence in it. Well, except that there's a record in the underlying proceeding, the 55 days of trial, and it's referred to in the transcript of the hearing before Judge Kavanaugh, because each of the plaintiffs were asked about it, at least those that were present. But you can't deny... But what I'm saying is at the outset... The record says what it says, and it's got in there evidence from the plaintiff's perspective that, hey, this guy said she's my lawyer. She said it to me. Right to me. Isn't that enough under Petrillo? No, I don't believe so, because I believe that first of all, when I went through that record carefully as to who said what and what, for example, Dr. Ostreicher was basing his testimony on, it was clearly set forth on cross-examination. It was a conversation with Dr. Ambrose, and Dr. Ambrose did not tell them that, when he was asked this on cross, CBM was not their personal attorneys. Now we're arguing about facts, right? Yes. Okay, and I understand the plaintiff's position to be, once you start arguing about facts, that's when we're allowed to be in front of a jury. That's our Seventh Amendment right. As soon as you start Now, why is it that under Lytle, they're wrong about that? Lytle says, you know, there's going to be some judicial waste here. That's too bad. This is important to vindicate the Seventh Amendment. We're going to live with that. Why are they wrong? I believe that because when the summary judgment was decided, and I think if there's another basis to decide it, this Court can, because I believe it's plenary, that I believe that what Judge Kavanaugh was saying, when he used the words rational and reasonable in his ultimate decision, I believe that he is saying, and said it in the summary judgment motion, he said it differently. He said, there's no dispute of facts, because I've already ruled, but I believe... Isn't that very, very, very different? Yes, it is. No reasonable juror could look at this record and see it another way? Well, that's why I said that this Court, in my opinion, would have a basis. If it were to affirm Judge Kavanaugh, it could do it on the basis of another reason. Help me out here. What am I to make out of Judge Kavanaugh's language as follows? And now I'm quoting the transcript. This is an evidentiary hearing just on this issue of disqualification. To the extent that people think this is going to be a trial of the case, it is not. So we're going to limit it. This is going to be a limited hearing on the issue, as Judge Bissell suggested or directed, and that's what we're going to do. What limitations was he talking about? Well, I don't think... I think he was adopting what Judge Bissell said. Judge Bissell, in his decision, clearly said, we are going to decide pre-trial, which is something you normally don't do, of course. But he was not going to accept the argument that if there's some doubt you disqualify the lawyer, and that's right in his decision. We will decide pre-trial whether they were the attorneys or not. I believe that's what he said. And in fact, that's what happened. Look at the waste of resources. And the reason I opened up by saying about blinders on, here is a case where the plaintiffs all testified, put in all the evidence they wanted at that time. And nevertheless, the judge... But if you say that, there's no record of the judge saying, now, is this absolutely everything you're ever going to want to say about the issue of attorney-client? I mean, they put in some evidence, but then they wanted to put in some more later. There's no bar on that, is there? And as long as it's different, then why should the previous ruling be law of the case? I believe that it should be, just for all the reasons why we have a law of the case doctrine. Law of the case is designed to prevent people from getting whipsawed, right? And isn't it kind of ironic that under these circumstances where Judge Kavanaugh says, don't worry, we're not trying the case here, that in the end, he says, okay, it's law of the case. Doesn't that seem to you to maybe turn the doctrine on its head a little bit? No, because there's somewhere else in the transcript, and it's toward the end of the proceeding where Judge Kavanaugh said something to the effect like, I don't know what the ramifications of any decision I make would be. And then when we made our motion based on that decision, he agreed with us on the rule of the law of the case. So I don't know that the two were inconsistent, Your Honor. Maybe the ramifications were that at that point in time, when the judge was taking a preliminary look on the issue of the relationship, at that point in time, there was sufficient evidence for him to make a preliminary determination, but not a determination that was to be binding on the substantive issues of relationship at the trial of the case. Well, either you're someone's lawyer or you're not, or you're a non-client who becomes someone's client at that hearing. Didn't Judge Kavanaugh kind of misunderstand the whole new evidence concept? I mean, he says here, and I'm at A-102, in opposition to CBM defendant's motion for summary judgment, plaintiffs allege that new evidence was available, asking the court to reconsider its January 27, 2006 findings of fact based on the evidence you're hearing. This court refused to consider new evidence was untimely in July 2006 as it is now. Didn't he essentially misunderstand the concept of what the new evidence's role was? Not that he should now consider it and change his mind, but because there was new evidence, he should say, aha, you know what? It's time for the jury to hear it all. Well, if we look at what the new evidence was, and it's attached to the certification, the new evidence was, as I recall, it was a letter that Linda Solor wrote that talked about in trying to reach this settlement in representing Rutgers that she wanted to, you know, get rid of this discrimination claim, okay? Yeah. And the other letter was, she wrote a letter talking about the position of her clients, which was plural. Well, the fact is, she did represent more than one person in the Dr. Powers federal court case. But who's to say that that evidence, which clearly shows that the lawyer believes it can deal with this matter as if Green is a client, who's to say that that doesn't matter? Isn't it when you hear that there is that new evidence that the antenna goes up and law of the case can apply because there is new evidence? I don't think so, because, and I'll tell you why, Your Honor, basically that in that case, the university was settling a case. If the university in settling a case wanted to include provisions to help out the students, that does not mean and cannot mean it's our position that our law firm, while representing the university, just because it might benefit a student, would in any way, shape, or form mean that our clients are their attorney, especially... Counselor, then your argument here is that record makes it clear that the hearing that all counsel understood, court understood, that that hearing was to be the last opportunity that either side would have to prove whether or not an attorney-client relationship existed. As it turned out, yes. Well, can you say as it turned out? I mean, don't we have to look at what people were saying at the time they were saying it? Yes. Okay. So, Mr. Zerovsky is directly on record again. It's on the papers saying, hey, now I haven't put in everything I would do. There's other discovery I want. I don't see how it could be any clearer that the plaintiffs were asserting we are not attempting to make our full case here. We want our day in court on this. Well... And arguably, if the judge had said, well, I really want to see everything you have, they could have, you know, and we're really going to decide this issue, they might have withdrawn their disqualification motion. Who knows? Here. Maybe you could respond to this. Is your position that... Well, I'll assume for the sake of discussion that the district court understood that this was a preliminary question, this disqualification issue, and that the evidence that was going to be presented was developed on a truncated schedule, and that it wasn't intended to be a full presentation on the merits of an element of the claims in the case? Take that as a given that that was understood. Is it your position that even under those circumstances, a preliminary ruling or a ruling on that evidence has to bind whatever comes later? Yes, it is, Your Honor. And do you have any authority for the proposition that preliminary rulings are binding as law the case? In other words, under that reasoning, isn't a preliminary injunction... Once you've had a ruling on a preliminary injunction, you just wrap it up because no matter what happened in the rest of the case, it's done, right? Yes. Well, that's not the way the system works, is it? I mean, we do have... No, I'm sorry. I thought you asked me a different question. I'm sorry. Yes, that's correct. My question is, isn't this something akin to that? You had a preliminary injunction kind of setting, then you had an attempt by the plaintiff to want to take it to the full and the court said, no, it's done. We've decided that. How is that different or more fair than telling a preliminary injunction person, no, we're not going to hear the rest of your case? I think it was... I'm not going to say it's more fair. I would say that the hearing they had was fair. The plaintiffs produced their own testimony, which they've been talking about on the initial summary judgment motion. It was explored. They were cross-examined and this judge made certain findings that we believe... Happens in a preliminary injunction hearing too, right? I'm sorry? Exactly the same kind of stuff happens in a preliminary injunction hearing. I understand that. And yet, we let people have their day in court on the merits, don't we? But in my opinion, Your Honor, we made a motion for summary judgment. As you know, summary judgments, when they're granted to throw out a case, arguably deprive someone of a jury trial. That's why... I mean, it happens. And the other points are made in my brief, you know, about there's only three plaintiffs left. Each of these three plaintiffs, when they were at hearings, heard our client say, I don't represent the students. The first day, Mrs. Green was there. Dr. Ostreicher was there. The only other third, the third current plaintiff is Mr. Spiney. He specifically said he was never told that our client was his personal attorney. He was at a hearing when he was being cross-examined. And again, Ms. Salora, in answering something about an objection, said, he's not my client. And we believe that's been expressed. And that summary judgment should have been granted. Thank you. Thank you. I want to begin where my adversary just ended. Those statements made at the hearing were made after the events that I discussed earlier, which established the attorney-client relationship. At that time, in preparing for the hearing, that was never said to them. To the contrary, the highest representative of the university, who was herself an attorney, told them that they couldn't have attorneys there to represent their own separate interests in the hearing, and that there was no need for them because Carpenter, Bennett, and Morrissey would be protecting their interests. Two of my clients asked directly, who are you representing? And we're told, we're representing you. Salora denied it was her handwriting on the exhibit. We sought, in advance of this hearing, leave to get a handwriting sample and take it to a handwriting examiner. That was denied because they didn't want to delay the hearing, which could have caught her in what I believe is an attorney lying under oath. But what I believe is not relevant, but we have a to the jury. So it was established. That's one thing. Number two, the duty is not on the client. Students who are students of anthropology, and they don't make their specialty the anthropology of lawyers and courts, what they understood. The New Jersey ethical rules are clear that there's a duty on the part of Carpenter, Bennett, and Morrissey to make sure that things are plain to people who are the constituents of a complicated organization. The duty is on them. And when they fail to make the duty, and if the clients misunderstand, the New Jersey courts have consistently said that those attorneys are disqualified. That's what the courts have consistently said. We certainly had confused people. And number two, in terms of lack of explanation, it's really outrageous what happened with Adriana Gretschy-Green. I mean, she had a very case of sexual harassment against the university. They're talking with her. They're expanding her whole case. They're getting her to open up on everything to them without making any understanding that they're ever going to provide her with any relief. And she thinks they're doing it. And she says in her affidavit, which is quoted in the record, that I wouldn't have done this unless the university told me they were working for me. And I believe that they were working for me. And everything about the way the CBM attorneys dealt with me led me to believe that they were on my side. They were working for me. And with the case of Dr. Ostreicher and Mr. Spiney, their remedies were only in an academic forum. This had gone all the way up to the president. He'd ruled in their favor. And then it's essentially vacated because Dr. Powers takes an appeal. The plagiarism issues that they had could only be decided in an academic forum. And they were told they couldn't have their own attorney there, that they shouldn't worry because CBM is going to take care of them. So I don't understand really how Judge Kavanaugh concluded that there's no way a reasonable person could have concluded that they were being represented in some way by CBM. This had many aspects of this dispute beyond just the tenure hearing. And there'd been a lot of water under the bridge and a lot of things told to them. And CBM, it's undisputed that CBM never sent a letter which said, listen, this is the relationship. We want to make sure you understand it. Not only didn't they send a letter, it's undisputed they never sat down and talked with them that way. And when two of my clients asked the question, they said, don't worry about it. Trust us. It's okay. It's a classic case. There was a person I shared law offices with, an older lawyer, and he loved the t-shirt that he wore that said, trust me, I'm a lawyer. It's exactly that case. It's lawyers acting in a way that benefits their primary client, Rutgers. Sure, mess up their individual claims against your client. They had a reasonable reason they acted. I would ask you that if you send it back to trial because of the new evidence or because of the Rule 56F application that we made, which I believe are substantial grounds in and of themselves to send this back to trial, I hope that you will please address the disqualification issue. We argue in our briefs that the disqualification issue was decided wrongly on both grounds. Wasn't that something for the judge to make a judgment about? I mean, in fact, the whole point of this discussion we've had today is a judge could decide one thing one way, a jury could decide something a different way. To the extent it depends on attorney-client relationship, if he's right on the law, he said nothing about the Rule of Professional Conduct 1.13 burden of explanation. He put the burden on my clients. If that was a mistake of law, you can do it. In terms of my first ground that they had a conflict of interest with their client, Rutgers, I believe Judge Bissell was wrong. You can certainly review whether Judge Bissell was right or wrong on the law in that. And if they're disqualified on that basis, you can simply vacate the whole hearing because it becomes unnecessary for any determination to be made as to whether they were my clients. That was my principal argument of my disqualification motion. Point one was the conflict that they had with their own attorneys. Thank you, counsel. Take the case under advisement. Thank you very much.